Nelson, J.,'
delivered the opinion of the Court.
The complainant alleges, in his bill, that he is the security of James H. Starnes and William Popejoy, in one or more notes to John Nance; that his principals are unable to pay said debt, and that be is entitled to be exonerated by having certain deeds of conveyance declared fraudulent, and the tract of land therein mentioned, subjected to the satisfaction of said indebtedness.
Process of attachment and injunction were duly issued, levied and made known; and the proper parties were brought before the Court.
Objection was made in argument, to the sufficiency of the proof as to complainant's liability. But it appears satisfactorily, from the answer of John Nance and judgment pro confesso, that, on the 7th of July, 1860, complainant became security to him, for the persons named in the bill, in a note for fifteen hundred dollars, payable two years after date, and bearing interest from date.
It appears that James, H. Starnes was the owner of the tract of land in the pleadings mentioned; that he *584 conveyed it to Lis daughter, Mary 0. Starnes, on the 24th day of January, 1861; that on the 20th of March, 1861, the said James H. and Mary C. conveyed the same tract to Stephen Atkins, by whom it was conveyed to Pleasant Starnes, on the 23rd of January, 1863, by a deed improperly admitted to registration, on the evidence of a single witness.
Each of the deeds are attacked in the bill for fraud; and it is further alleged, that on the 22nd day of November, 1865, Milly Atkins filed a bill for divorce and alimony against her husband, Stephen Atkins, and others; that at the July Term, 1866, of the Chancery Court at Rutledge, in ■ which the present bill was filed, she obtained a decree for divorce and alimony, the latter consisting of certain notes executed to her said husband by Pleasant Starnes, for the purchase money, or a part thereof, of the said tract of land, and vesting in her, by substitution, the vendor’s lien of her husband.
It appears that an account was ordered in the last named cause, to ascertain the amount of said notes; that no final decree has been pronounced therein, directing a sale of the land; and the complainant in this case, insists that his rights, as a creditor, are to be preferred to the wife’s right to alimony.
It is fully admitted in the answers of James H. and Mary C. Starnes, that the two deeds of conveyance first named, were made to hinder and delay creditors; and the same fact is admitted as to the deed first executed, in the joint answer of Pleasant Starnes and Milly Atkins. But the two latter deny, that the deed from James IP. and Mary C. Starnes to Atkins, was fraudulent, and *585 insist that the contract between Atkins and Pleasant Starnes was valid and binding; that the said Pleasant was to pay one thousand dollars and a wagon for the land; that he had delivered the wagon and executed his notes for the residue of the purchase money, which are still outstanding, and were attached in the said suit, in which Milly Atkins is complainant.
It is furthermore insisted, in their answer, that Stephen Atkins had fully paid the purchase money due from him for the land, by satisfying certain debts due from James H. Starnes to 'Warham Easley and others.
Ho answer was filed by Stephen Atkins, and judgment pro eonfesso was regularly obtained and entered against him.
On the Lh earing, complainant excepted to the deposition of Stephen Atkins, and defendants excepted to the reading of the depositions of James- II. Starnes and Mary C. Starnes; which exceptions were disallowed as to the depositions of' Mary 0. Starnes and Stephen Atkins, but allowed as to James H. Starnes; the depositions of the two former being read, and of the latter, not read, upon the hearing.
Upon the controlling questions presented by the pleadings, and submitted in argument, we are of opinion:
1st. That Mary C. Starnes and James H. Starnes were competent witnesses to prove that the deeds executed by them, or either of them, were executed fraudulently, and with intent to hinder and delay creditors.
Whatever diversity of opinion may have existed, or may still exist in other States, as to the competency of a witness to swear to his own turpitude in the execu *586 tion of a deed, the question has long been res adjudi-catei and is no longer open to controversy, in this State. It was fully considered, and the opposing authorities cited and reviewed by Judge Haywood, in delivering the opinion of this Court, in the case of Calloway v. Willie’s lessee, 2 Yer., 1, 5. And the principle then established, has since been acquiesced in, on the ground that the witness does not testify in favor of or against his own interest. In a legal point of view, he has nothing to gain, because he can not set aside his own fraudulent act; and nothing to lose, because his vendee being a party to the fraud, can obtain no relief against him. And so he falls within the rule as laid down in 1 Greenl. Ev., §§ 390, 410.
2d. On the other, Stephen Atkins was not a competent witness to establish his deed to Pleasant Starnes; because of the covenant of warranty contained in his deed. Nor was he competent to prove the payment of the consideration by himself, to or for the benefit of his vendors, as in either view, he was directly interested. This principle is firmly settled by the cases of Burke v. Clarke, 2 Swan, 310; Elliott v. Boren, 2 Sneed, 662; Lawrence v. Senter, 4 Sneed, 54; and Ingram v. Smith, 1 Head, 423.
And we do not deem it necessary to reiterate the reasoning upon which those cases are founded; or to review the authorities to which we have bpen referred, which relate chiefly to negotiable instruments and questions of commercial policy and law.
3d. We have attentively examined all the testimony contained in the record, and without here entering into *587 an elaborate analysis of the statements of the witnesses, we deem it suffieient to declare as the result of that examination, that the various deeds before referred to, were made with the intent to hinder and delay creditors, and are fraudulent and void.
4th. Ho opinion is announced as to what would have been the effect of the decree in favor of Mrs. Atkins, if the the Master’s report had been confirmed, and her suit finally terminated.
The bill in this case was filed before any final decree in that cause was ' pronounced; and it has been heretofore determined by this Court, that “upon well established general principles of law, the claims of the husband’s bona fide creditor, or liabilities properly incurred on his behalf, existing prior to the application for divorce, must prevail over the rights of the wife.” See McGhee v. McGhee, 2 Sneed, 223.
Holding, as we do, that the deed to Stephen Atkins w'as fraudulent and void; that his deed to Pleasant Starnes was improperly admitted to registration; and that the latter does not maintain the attitude of a purchaser for a valuable consideration without notice, the proceedings in the suit for divorce do not interpose any barrier in the way of the relief sought by complainant.
5th. Former adjudications of this Court have established, “that a surety has the right to bring the creditor and his principal before a Court of Chancery, and compel the payment of the debts, so as to exonerate himself.” See cases cited in Heiskell’s Dig., 494, § 512; 1 Story. Eq., §§ 327, 730, 849. But prior to the' adoption of the. Code, it was held, that he is not entitled to *588 aside fraudulent conveyances before any loss incurred or payment made. Williams v. Tipton, 5 Hum., 66, Subsequently to the latter case, it was held, that sureties, by virtue of their liability to suffer, had a right, before paying the debt, to file their bill to restrain the conveyance of land, and have it applied to their relief. Henry v. Compton, 2 Head, 552; and in Decherd v. Edwards, 2 Sneed, 102, it was determined that a surety has the right to avail himself of all liens, rights and advantages of the creditor against his principal debtor, or his property, by substitution; and that the security in a delivery bond could, before payment of the debt, file a, bill in equity for the protection of the property. In McNairy v. Eastland, 10 Yer., 316, 320, the jurisdiction of a court of equity to grant relief, either to the creditor or surety, in regard to the equitable real or personal estate of the debtor, was treated as being ancillary to that of a court of laAv, and founded upon the lien of the judgment as to equitable real estate, and of the execution as to equitable personal estate.
The Code, 4288, authorizes any creditor, without having obtained a judgment at law, to file his bill in Chancery for himself, or for himself and other, creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and to subject the property by sale or otherwise, to the satisfaction of the debt. And by 4291, the same power and jurisdiction are conferred upon the Court, in all respects, to set aside fraudulent conveyances and other devices, as if the creditor had obtained judgment, and execution thereon had been *589 returned unsatisfied. We are of opinion that, within, the meaning of this statute, and in the view of a court of equity, a surety, before payment of the debt, is a creditor in such a sense, as that he may bring his principal and the creditor into a court of equity, and obtain exoneration out of the property, real or personal, fraudulently conveyed by the former, or its proceeds in the hands of any one who is not a bona fide purchaser without notice. Section 3457 provides, “that any accommodation endorser or surety may, in like manner, sue out an attachment against the property of his principal, as a security for his liability, whether the debt on which he is bound, be due or not.”
It is manifest that the object of the Legislature in making these provisions in the Code, was, to facilitate the remedy against fraudulent conveyances, and to obviate the cases in which it had been held, in giving a construction to the Act of 1801, c. 25, § 2, that no man can be recognized as a creditor, until he has established his right to claim in that character by a judgment at law or a decree in Chancery. See Hopkins v. Webb & Hays, 9 Hum., 522; Chester v. Greer, 5 Hum., 34, 35; Williams v. Tipton, 5 Hum,, 66.
But even in the case last cited, it was said, “it is true that, arising from the relation of suretyship, the right does exist in the surety, for' his own protection, to bring the principal and the creditor into a Court of Chancery.” This view was substantially taken, also, by this Court, in Howell & Maget v. Cobb, 2 Cold., 105.
If any doubt can exist as to the correctness of the construction given to the enlarged remedy provided by *590 the Code, it is obviated in this case by the failure to resist the jurisdiction by plea in abatement, demurrer, or motion to dismiss, as provided in Code, 4309.
Affirm the Chancellor’s decree.